PECK, STOW & WILCOX CO. (GROSJEAN v.). See Case No. 5,841.

PEDEE, The (MAAS v.). See Case No. 8,-652.

---

## Case No. 10,899a.

### In re PEDERSON.

[Betts' Scr. Bk. 220.]

District Court, S. D. New York. June 9, 1851.

SEAMEN—EXTRADITION—TREATY OF JULY 4, 1827.

[Where a Swedish seaman deserted in a port of the United States, and afterward voluntarily returned to his country, thus placing himself under the control of his own government, that government, by a subsequent official act, authorizing him to emigrate to the United States, is precluded from demanding his surrender as a deserter, under the provisions of the treaty of 1827, art. 14 (8 Stat. 352).]

A habeas corpus and certiorari were issued to bring the body of Lars Pederson before the court, and also for a return of the proceedings before Commissioner Nelson in his case. It appeared from the papers that Pederson was one of the crew of the Swedish brig Lina, and shipped on board her in Norway on a voyage to the United States and back. In November, 1849, it is alleged, he deserted the vessel in New Orleans; and being now found in this city, the vessel being in this port, he was arrested at the instance of the Swedish consul under the provisions of the treaty between the United States and Sweden and Norway, and of the act of congress passed to carry into execution the treaty stipulations.

It was proved before the court that in 1850 Pederson had returned to Norway, and the port from which he shipped, and where the owners of the Lina reside, and in June of that year, with the knowledge of the said owners, obtained a passport from the local authorities of that place to leave Norway for the United States, and that he embarked at the same port for New York in a Swedish vessel with his family, and removed to New York for his permanent residence, where he now lives, and had resided eight months or more, when arrested for such desertion.

BETTS, District Judge, held that the object of the treaty between the United States and Sweden and Norway, ratified July 6, 1827, (article 14), was to provide for the restoration of deserters from the vessels of the representative nations, within the ports of each other, to the authority of the country to which they belonged. Neither country assumed the duty of compelling a deserter to serve out his contract on board the vessel from which he deserted. The great national policy intended to be subserved by the stipulation is to have seamen restored to the country where they belong, and their obligation to continue with a particular vessel, or the sufficiency of their excuse for leaving her, are not matters either power takes jurisdiction over, or undertakes to decide, further than to ascertain the fact that they are attached to such vessel, properly documented, when their arrest and surrender is claimed. On their arrest as deserters they are delivered to the consul of the government claiming them, to be sent home in such vessel as he may elect. The local authority accordingly interferes only in case the facts proved show the seaman claimed is still prima facie under his shipping contract, so that the master of the vessel could rightfully enforce his service on board if the man was within his control, and that he is withdrawn from that authority only by his act of desertion. The judge observed he was not required to say whether this right of reclamation could be exercised at any period, however long after the desertion occurred. because, in the present case, the reason upon which the United States assumes to interfere to arrest a deserter had been fully satisfied by his voluntary return to Sweden, where he belonged, and by his thus placing himself under the control of his own government. That government, by a public official act, subsequently authorized him to emigrate to the United States. Whatever effect that permission may have upon the civil rights of the master or owners of the Lina, in respect to the violation of his contract with them by Pederson, it precludes the government of Sweden now demanding the surrender or extradition of this man by the United States as a deserter from the Swedish flag. The United States, aside from its solicitude to fulfill with fidelity every treaty engagement, would be impelled to execute on its part, promptly and strictly, mutual stipulations with other countries, so advantageous to its own navigation and trade, as those securing the return home of seamen who desert her service. But she could not expect that foreign governments will interest themselves to replace within her power such seamen when they have been allowed to expatriate themselves, after returning and placing themselves under her authority subsequent to the desertion. The judge decided that the case before him did not authorize the detention of the prisoner, and ordered him discharged from his arrest.